No. 82-238

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

MICHAEL J. LEMLEY,

Plaintiff and Appellant,

vs.

BARBARA ALLEN, d/b/a
CACTUS RECORDS,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Bridger Law Office, Bridger, Montana
Joseph E. Mudd, Bridger, Montana
Rodney Schwasinger, Bozeman, Montana

For Respondent:

Landoe-Brown Law Firm, Bozeman, Montana

Submitted on briefs: November 5, 1982

Decided: February 24, 1983

Filed:

FEB 24 1983

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Michael Lemley brought an action in the District Court of the Eighteenth Judicial District, Gallatin County, against his lessee, Barbara Allen. Lemley sought declaratory relief and unspecified damages for Allen's failure to vacate the leased premises. Allen counter-claimed, alleging that Lemley had converted the premises to his own use and violated her peaceful possession. Allen sought $12,000 in general damages and $50,000 in punitive damages. The case was tried to the judge, who found for Allen. The judge awarded Allen no general damages, but did award her $500 in punitive damages, plus attorney fees and costs. Lemley appealed. We affirm in part and reverse in part.

Appellant Lemley leases a portion of the Baxter Hotel in Bozeman. On March 10, 1978, he and respondent Barbara Allen entered into a sub-lease agreement whereby Allen leased an area in the basement of the Baxter Hotel from Lemley. The sub-lease was for a five-year term and the lease payment was originally set at $150 per month. In the fall of 1979 Allen decided that she would like to lease more of the basement from Lemley. Lemley agreed to lease the additional space, and he and Allen orally agreed that the lease payment should be raised to $220 per month. Allen began paying this amount in January of 1980.

On January 9, 1980, Lemley executed and delivered to Allen a new sub-lease. The term was five years, although the term began on March 10, 1978. The new lease reflected the new increase in lease payments, but was otherwise essentially the same as the previous lease. Allen gave the lease to her attorney, who suggested certain changes. The changes were

2

not acceptable to Lemley. No further negotiations took place. Allen continued in possession and made her $220 payments, which were accepted by Lemley.

In late July of 1980 Allen had a telephone conversation with Lemley in which she told him that the changes in the lease that her attorney had requested weren't that important to her and that she would sign the lease and deliver it to him. The signed lease was mailed to Lemley in early August. Lemley called Allen after he received the lease in the mail and told her that he understood that she intended to move her business to a different location. Allen confirmed this and asked Lemley if he wanted the premises returned to him. Lemley said he wasn't sure. Several weeks later Lemley called Allen and told her that she must vacate by September 20 because he had found another sub-lessee. Allen had been negotiating with several potential sub-lessees herself, and told Lemley that she thought that she and he had a valid lease. Lemley disagreed and said that only a month-to-month lease was in effect. Lemley's attorney sent Allen a letter on September 5 telling her that she was in anticipatory breach of the lease because she intended to move. On October 9 Allen was sent another letter telling her that the only lease in effect was a month-to-month oral agreement, and that as of November 9 her rent would be $687.50 per month. (Lemley had become aware in the late summer that his own lease payments would increase substantially in January 1981.) Allen continued to pay $220 per month up to the time of trial in January 1982. Lemley accepted all of these payments.

Trial was had on January 14, 1982. The judge found that the parties had orally amended the original lease, and that the original lease with oral amendment was in effect until Allen's execution and return of the second lease, which

3

constituted a valid acceptance of that lease. The judge held that Lemley had disregarded Allen's right to peaceful possession. Allen was awarded $500 in punitive damages plus attorney fees. The judge found that there was insufficient evidence to warrant an award to Allen for lost rents caused by her inability to sublet the premises.

Lemley appealed, and raises the following issues:

(1)   Was there a valid written lease between the parties?

(2)   Was an award of punitive damages proper?

(3)   Was an award of attorney fees proper?

(4)   Were costs properly allowed?

The judge was correct in finding that the parties had orally modified the original lease. A contract in writing may be modified by an executed oral agreement. Section 28-2-1602, MCA. An oral agreement modifying a written agreement is executed when its terms have been fully performed. Here, Lemley allowed Allen to use more space, and she in turn paid more rent. We have previously held that an executed verbal agreement to expand the leased premises and increase the rental payments modifies a lease agreement. Kosena v. Eck (1981),____Mont.____, 635 P.2d 1287, 1291, 38 St.Rep. 1736, 1740. Therefore, the original lease was modified (but still in effect) in January 1980.

The judge was also correct in finding that Allen's execution of the second lease in July resulted in a validly executed contract. Allen never rejected Lemley's offer. At most, she had her attorney make an inquiry in regard to the possibility of other terms. Such an inquiry does not constitute a rejection. W. Jaeger, 1 Williston on Contracts §51 at 166, (3rd ed. 1957). Furthermore, Lemley did nothing to revoke his offer. Section 28-2-512, MCA. Although it is

4

true that a considerable period of time passed before acceptance by Allen, it was not an unreasonable time under the circumstances. The parties were operating under an orally modified written agreement that was in most respects identical to the second agreement. The passage of time did not work a revocation.

The District Court was correct in finding that the written leases were effective. The parties were not operating under a tenancy at will, and Lemley did not have the power to order Allen to vacate or to raise her rent.

Appellant Lemley argues that the award of punitive damages was improper, and we agree. Allen's counter-claim was based upon Lemley's supposed conversion of the premises and interruption of Allen's peaceful possession. Conversion and interruption of peaceful possession both sound in tort, and may be proven in order to establish a cause of action independent of the contract, which could support punitive damages. However, Allen could not be awarded punitive damages upon her theory of conversion, because conversion is a tort applicable to personal chattels, and any interference with her leasehold interest would have been interference with a real chattel. Nor does the record support an award of punitive damages upon her theory of interference with peaceful possession. Allen told Lemley in August that she would be moving out in October. There is no indication in the record that Lemley's actions caused Allen to vacate the premises sooner than she had planned. While it is true that Lemley would not agree to allow Allen to sub-lease to a third party after she moved, that was his right under the agreement. There has been no proof of tortious conduct by Lemley.

In the absence of tortious conduct, an award of punitive damages based upon a simple contract action cannot stand. Section 27-1-221, MCA; section 27-1-311, MCA. Punitive damages should not have been allowed.

Appellant's third issue, which challenges attorney fees, is totally without merit. Both leases contained this clause:

> "In the event that either of the parties is required to bring an action at law, then the prevailing party shall be entitled to recover all costs including a reasonable attorney's fee, costs of discovery and court costs necessary in prosecuting the action."

A request for attorney fees was contained in Allen's answer. Allen prevailed in her defense. Obviously, the award of fees was proper.

It is Lemley's final contention that costs should not have been allowed to Allen because no memorandum of costs was served upon him. Section 25-10-501, MCA provides that "[t]he party in whose favor judgment is rendered and who claims his costs must deliver to the clerk and serve upon the adverse party . . . a memorandum of the items of his costs and necessary disbursements in the action. . ." This Court has held that the statute governing costs must be strictly followed, and a failure to serve a memorandum upon the adverse party deprives the district court of jurisdiction in the matter. Riddell v. District Court (1906), 33 Mont. 529, 85 P.367. The award of costs was improper and must be reversed.

We must note that the respondent has attempted use of Rule 14, Montana Rules of Appellate Civil Procedure, to challenge the failure of the District Court to award her actual damages. The respondent did not cross-appeal.

> "Although Rule 14 provides for review of matters by cross-assignment of error, this does not eliminate the necessity for cross-appeal by a respondent who seeks review of rulings on matters separate and

distinct from those sought to be reviewed by the appellant. [citation.] A respondent who has not cross-appealed may not seek a determination of the amount involved more favorable to him than that made by the court below." Johnson v. Tindall (1981) ___ Mont.___ , 635 P.2d 266, 268, 38 St.Rep. 1763, 1766.

The portions of the judgment which awarded punitive damages and costs are reversed. The cause is remanded for appropriate amendment of the judgment.

_____
Justice

We concur:

_____
_____
_____
_____
Justices