WILLOW CREEK RANCH, L. L. C., Plaintiff-Appellant,†

v.

TOWN OF SHELBY and County of La Crosse, Defendants-Respondents. [Case No. 97–2075]

WILLOW CREEK RANCH, L. L. C., Plaintiff-Appellant,†

v.

TOWN OF SHELBY, County of La Crosse, and Wisconsin Municipal Mutual Insurance Company, Defendants-Respondents. [Case No. 98–0138]

Court of Appeals

*Nos. 97–2075, 98–0138. Submitted on briefs October 14, 1998.—Decided December 10, 1998.*

(Also reported in 592 N.W.2d 15.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James R. Koby* and *John H. Schroth* of *Parke O'Flaherty, Ltd.,* of La Crosse.

On behalf of the defendant-respondent, Town of Shelby, the cause was submitted on the briefs of *William W. Ehrke* of *Crivello, Carlson, Mentkowski & Steeves, S.C.,* of Milwaukee.

On behalf of the defendant-respondent, County of La Crosse, the cause was submitted on the briefs of *David L. Lange,* assistant corporation counsel of La Crosse, and *Bradley D. Armstrong, Steven A. Brezinski* and *Rita M. Knauss* of *Axley Brynelson, LLP,* of Madison.

On behalf of the defendant-respondent, Wisconsin Municipal Mutual Insurance Company, the cause was submitted on the brief of *Bradley D. Armstrong, Steven A. Brezinski* and *Rita M. Knauss* of *Axley Brynelson, LLP,* of Madison.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DYKMAN, P.J.   This is a consolidated appeal by Willow Creek Ranch, L.L.C., from orders granting summary judgment in favor of the Town of Shelby (Town), the County of La Crosse (County) and Wisconsin Municipal Mutual Insurance Company, regarding Willow Creek's suits against the Town and County for enforcing a zoning ordinance. Willow Creek initially filed suit requesting that the trial court issue both a declaratory judgment regarding its right to operate a game bird farm on its property and an injunction that would bar the Town and County from further interfering with the operation of the farm. Willow Creek later filed a second suit requesting compensatory damages

caused by the Town and County's interference. Both suits were dismissed on summary judgment.

On appeal, Willow Creek argues that: (1) the regulation of game farms is within the exclusive province of the DNR, and the Town and County's efforts to prevent the operation of its game bird farm constitutes an unconstitutional exercise of their police powers; (2) the Town and County's decisions to issue a citation and not grant its rezoning petition were both unreasonable and arbitrary; (3) the Town should be equitably estopped from enforcing the zoning ordinance, because the town chairman misinformed Willow Creek that it would not need a zoning change or a conditional use permit to conduct commercial hunting activities on its property; (4) the Town and County are not immune from liability under § 893.80(4), STATS., because Willow Creek was seeking equitable relief and the Town and County were engaging in ministerial acts; and (5) res judicata does not require a dismissal of its second suit.

We conclude that while the DNR has the statutory authority to regulate the operation of game farms, its authority does not negate the Town and County's authority to create and enforce zoning ordinances. In addition, the Town and County did not act arbitrarily or in excess of their authority when they decided to issue a citation to Willow Creek for conducting commercial hunting activities on property zoned for agricultural purposes. We also conclude that the Town and County are immune from liability under § 893.80(4), STATS. Finally, because Willow Creek has not stated a valid cause of action in either of its suits, we need not address the issue of res judicata. Accordingly, we affirm.

## BACKGROUND

In October 1993, Willow Creek allegedly contacted the Town to find out whether a zoning change was required in order for it to use its property for commercial hunting purposes. The town chairman, John Burdos, allegedly informed Willow Creek that no zoning change or permit was required to operate a game bird farm. In 1994, Willow Creek received a license and permit from the DNR to operate a game bird farm on its property. In September 1994, Willow Creek opened its game bird farm to the public after investing an estimated $340,000 in the property.

In 1995, the Town and County informed Willow Creek that it needed to have its property rezoned from its current status as "Agricultural A" to "Agricultural B" in order for it to operate its game bird farm. Willow Creek petitioned the County to rezone its property to Agricultural B. In the alternative, Willow Creek requested that the County issue a conditional use permit that would allow it to conduct commercial hunting activities on Agricultural A property.

In December 1995, the County informed Willow Creek that it would have to close its game bird farm until the zoning issues were resolved. In mid-January 1996, the County temporarily allowed Willow Creek to resume operation of its game bird farm. In late January, the County voted to deny the rezoning petition and defer the matter for one more month. On February 7, 1996, the Town passed a resolution indicating that it did not support a change in zoning or the granting of a conditional use permit. In March 1996, the County granted Willow Creek's petition to rezone, but the Town vetoed the County's decision. On March 28, 1996, the County issued a citation to Willow Creek for violating its zoning ordinance by conducting commercial

hunting activities on property zoned for agricultural purposes.

On May 15, 1996, Willow Creek filed suit seeking a declaratory judgment. It argued that the Town and County exercised their police powers in an unreasonable and arbitrary manner. In addition, Willow Creek argued that the Town and County were attempting to regulate hunting in excess of their authority because their actions were not reasonably necessary to promote the health, safety or general welfare of the community. It also asserted that the Town should be equitably estopped from enforcing the zoning ordinance because John Burdos, the town chairman, erroneously stated that Willow Creek did not need a variance or a permit to operate its game bird farm, and Willow Creek relied upon his statement to its detriment. Along with a declaratory judgment, Willow Creek also requested that the trial court issue an injunction prohibiting the Town and County from further interfering in the operation of its game bird farm.

The Town and the County moved for summary judgment. They argued that the DNR's authority to issue permits did not negate the County's authority to enforce existing zoning ordinances, which in this case did not allow Willow Creek to conduct hunting activities on its property. They also argued that they were acting well within their statutory authority when making their decisions to enforce the ordinance. Finally, they asserted that equitable estoppel does not bar them from enforcing the zoning ordinance, because the ordinance did not permit the operation of a game bird farm. The trial court granted their motion for summary judgment.

Willow Creek also filed a notice of claim with the Town and the County, pursuant to § 893.80(1), STATS.,

stating that it suffered damages as a result of their conduct. After these claims were disallowed, Willow Creek filed a second suit in which it raised essentially the same claims that it raised in its first suit. The only exceptions were that it added two insurers as defendants and sought monetary damages rather than equitable relief.

In July 1997, after the first suit was dismissed on summary judgment, the County and its insurer, Wisconsin Municipal Mutual Insurance Company, moved for summary judgment on the second suit. They argued that: (1) Willow Creek's claims were precluded by res judicata; (2) Willow Creek failed to state a claim upon which relief may be granted because the zoning ordinance provided the County with the authority to issue a citation; and (3) the County is immune from liability under § 893.80(4), STATS., for enforcing its zoning ordinance, because it is a discretionary act. In December 1997, the trial court dismissed the second suit on summary judgment. Willow Creek now appeals.

## DISCUSSION

■ We review orders granting summary judgment de novo, using the methodology set forth in § 802.08(2), STATS. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The moving party is entitled to summary judgment when no genuine issue of material fact exists and the movant has established entitlement to judgment as a matter of law. *See id.*

### 1. *Zoning Ordinances*

The first issue is whether local municipalities may prevent the operation of a game farm once the DNR has

issued a permit authorizing operation of the farm. In this case, the DNR issued a permit to Willow Creek allowing it to use its property to operate a "game bird and animal farm." Willow Creek argues that game farm regulation is within the exclusive province of the DNR and, therefore, not subject to the Town and County's regulation.

The DNR has the authority to regulate game farms, *see* § 29.574, STATS., and WIS. ADM. CODE § NR 16.02; however, that power is limited by § 29.425(2)(b), STATS. Section 29.425(2)(b) states that a county or town may "prohibit a person from possessing any live game animal or fur-bearing animal." The Town and County successfully relied upon this statute when they moved for summary judgment. But, as Willow Creek correctly points out, it operates a "game bird farm," not a "game farm." And because the legislature has articulated separate definitions for "fur-bearing animals," "game animals," and "game birds" in § 29.01, STATS., we cannot presume that the legislature intended game bird farms to fall within the scope of § 29.425(2)(b), when it did not include them in the language of the statute.[1] *See Ball v. District No. 4,* 117 Wis. 2d 529, 539, 345 N.W.2d 389, 394 (1984) (legislature is presumed to choose its terms carefully and to precisely express its meaning).

However, this conclusion does not end our inquiry, because § 59.69(4), STATS., provides the Town and County with another method to regulate how Willow Creek uses its property. Section 59.69(4) provides county boards with the authority to create and enforce

---

[1] This conclusion is further supported by the fact that in the section immediately prior to § 29.425, STATS., the legislature used both "game birds" and "game animals" in the language of the statute. *See* § 29.42(1), STATS.

zoning ordinances for the purpose of promoting the public health, safety and general welfare. Section 59.69(4), STATS., reads in pertinent part as follows:

> For the purpose of promoting the public health, safety and general welfare the board may by ordinance effective within the areas within such county outside the limits of incorporated villages and cities establish districts of such number, shape and area, and adopt such regulations for each such district as the board considers best suited to carry out the purposes of this section. The powers granted by this section shall be exercised through an ordinance which may, subject to sub. (4e), determine, establish, regulate and restrict:
>
> (a) The areas within which agriculture, forestry, industry, mining, trades, business and recreation may be conducted. . . .

For Willow Creek to operate a game bird farm in La Crosse County, it must both obtain the necessary permit from the DNR and the necessary zoning approval from the county board. Willow Creek failed to obtain the latter.[2]

---

[2] Willow Creek's property is zoned as "Agricultural A," which means that it may be used for raising crops, livestock, fish, grain and sod. See LA CROSSE COUNTY ZONING ORDINANCE § 17.34(c) (effective Dec. 27, 1980). It may also be used for "grazing" and "forest and game management." Commercial hunting activities are not expressly permitted under § 17.34(c). In contrast, property zoned as "Agricultural B" may be used for "fur and animal farms." See LA CROSSE COUNTY ZONING ORDINANCE § 17.37(e) (effective Apr. 19, 1966). The Town and County contend that in order for Willow Creek to operate its game bird farm the property needed to be zoned as Agricultural B. However, the Town vetoed Willow Creek's petition to change the zoned status of its property.

Willow Creek next argues that the Town and the County acted arbitrarily and in excess of their authority when they closed down its game bird farm. It contends that the Town and County's actions were not a reasonable exercise of their powers because Willow Creek's game bird farm did not violate the permitted activities under the applicable ordinance. Willow Creek contends that LA CROSSE COUNTY ZONING ORDINANCE § 17.34(1)(c) expressly permits property zoned as Agricultural A to be used for "forest and game management," "grazing," and "livestock raising," and that its use of its farm conforms with these terms. It further contends that it did not violate the ordinance by selling birds or charging a fee to hunt because § 17.34(1)(b) permits this. Willow Creek concludes by arguing that it was not operating its farm any differently than any other farm, and that the Town and County unfairly singled it out for prosecution.

While Willow Creek agrees that the Town and County have the authority to regulate its game bird farm operation if it posed a significant health or safety threat, it argues that no such threat existed. To support this assertion, it points to various steps it has taken to ensure the health and safety of its neighbors, which include: creating a buffer zone of at least 500 feet between the hunting area of the farm and nearest neighboring residence, regulating the types of firearms and their shooting distance that may be used on the property, and testing the area for noise problems. Because the farm did not threaten the health, safety or general welfare of the community, Willow Creek argues that the Town and County acted arbitrarily and in excess of their authority in shutting it down.

■ We afford great deference to legislative bodies in zoning matters. *Bubolz v. Dane County*, 159 Wis. 2d 284, 464 N.W.2d 67 (Ct. App. 1990). In this case, the County concluded that Willow Creek's use of its property violated the applicable zoning ordinance. Even if we questioned the County's decision, we may not substitute our judgment for that of the County. *See Schmeling v. Phelps*, 212 Wis. 2d 898, 917, 569 N.W.2d 784, 792 (Ct. App. 1997). Our ability to reverse in these situations is limited to cases of abuse, excess of power or error of law. *See Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 584, 364 N.W.2d 149, 157–58 (1985); *Bubolz*, 159 Wis. 2d at 297, 464 N.W.2d at 73. Willow Creek has failed to articulate how the Town and County exceeded their power. Without this evidence, we must defer to the County's judgment as to what conforms with the zoning ordinance and, therefore, uphold its decision.

Willow Creek also argues that the County acted arbitrarily in denying its petition to rezone when it granted a similar petition by the La Crosse Rifle Range, which was located within approximately 440 yards of the Willow Creek Ranch. We addressed a similar argument in *Schmeling*. In *Schmeling*, the plaintiff argued that a county executive abused his discretion when he vetoed the plaintiff's petition to rezone its property, while granting similar petitions from seven other individuals. We concluded that these seven other petitions were insufficient to show that the executive decision to veto the plaintiff's petition was an abuse of discretion, in excess of his power or an error of law. *See Schmeling*, 212 Wis. 2d at 917, 569 N.W.2d at 791–92. In this case, we have only one instance in which the County granted a petition to rezone after denying a

similar petition. Such an isolated occurrence is hardly sufficient to support a holding that the County abused its discretion or acted in excess of its powers. Therefore, we reject this argument.

## 2. *Immunity*

The remaining issues presented by Willow Creek deal primarily with the Town and County's liability. In its first suit, Willow Creek argued that it was entitled to a declaratory judgment as to its right to operate a game bird farm and an injunction to prevent the Town and County from further interfering with its operation. Willow Creek further asserted that the County and Town should be equitably estopped from enforcing the zoning ordinance because the town chairman allegedly informed it that it did not need to petition the County for a variance or a conditional use permit, which later turned out to be untrue. In its second suit, Willow Creek argued that it was entitled to compensatory damages for the harm caused by the Town and County's decision to issue a citation and its decision not to rezone the property. The Town and County responded to these assertions by claiming governmental immunity under § 893.80(4), STATS.

On appeal, Willow Creek raises two arguments regarding immunity. First, it asserts that § 893.80(4), STATS., does not shield the Town and the County from liability because it initially requested equitable relief, not monetary damages. Second, Willow Creek argues that immunity does not apply because the Town and County were engaged in ministerial acts, not discre-

tionary acts. We will address these two arguments in reverse order.[3]

Section 893.80(4), STATS., provides that no suit may be brought against a political corporation, governmental subdivision, or any agency thereof, or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions. These functions have long been referenced as "discretionary" acts. A discretionary act is one that "involves the exercise of discretion or judgment in determining the policy to be carried out or the rule to be followed [and] the exercise of discretion and judgment in the application of a rule to specific facts." *Lifer v. Raymond*, 80 Wis. 2d 503, 511–12, 259 N.W.2d 537, 541 (1977). A non-immune "ministerial" act, on the other hand, is one where the duty is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes,

---

[3] Willow Creek raises a third argument regarding immunity. It contends that equitable estoppel precludes the Town and County from raising immunity as a defense. However, it fails to cite authority to support this assertion. We have held that we will not consider arguments that are not adequately developed and supported by applicable authority. *See State v. Schaffer*, 96 Wis. 2d 531, 546, 292 N.W.2d 370, 378 (Ct. App. 1980).

Willow Creek relies on *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 559 N.W.2d 563 (1993), to support its claim. *Anderson* stands for the proposition that a municipality waives its ability to claim immunity when it fails to timely raise it as an affirmative defense. Here, however, the Town and the County timely raised immunity as a defense in their answers; therefore, waiver is not an issue. Because Willow Creek did not point to any other authority to support its assertion, we will not address it further.

prescribes, and defines the time, mode and occasion for its performance with such certainty that nothing remains for the exercise of judgment or discretion." *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610, 622 (1976). Whether the Town and County were engaging in discretionary or ministerial acts is a question of law we review de novo. *See Cavanaugh v. Andrade*, 202 Wis. 2d 290, 300, 550 N.W.2d 103, 108 (1996).

Willow Creek asserts that the Town and County breached their ministerial duty when they exceeded their authority by attempting to shut down the Willow Creek Ranch game bird farm, despite Willow Creek Ranch's legal right to operate a game bird farm. However, Willow Creek does not specify what ministerial duty existed or how the duty was breached. This is problematic because the first step in deciding whether summary judgment is appropriate is to review the pleadings and determine whether a claim has been stated. *See Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 477 (1980). Willow Creek has failed to do so.

■

We will assume that Willow Creek is arguing that because the DNR issued it a permit, the Town and County exceeded its authority when they enforced the zoning ordinance, and shut down the game bird farm. For reasons already discussed, the DNR's authority to issue a permit for the operation of a game farm is separate from the Town and County's authority to create and enforce zoning ordinances. Therefore, the Town and County did not exceed their authority, nor were they acting ministerially when they elected to enforce the ordinance.

■

Willow Creek also asserts that the Town and County are not immune under § 893.80(4), STATS., from claims for equitable relief. We addressed the scope of § 893.80(4), as it relates to equitable relief in *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 558 N.W.2d 653 ( Ct. App. 1996). In *Johnson*, the plaintiffs sued the city after it had refused to open a platted street "stub-end" that would have connected plaintiffs' property to a city street. In addition to compensatory and punitive damages for the city's "negligence" in denying them access to the city street, the plaintiffs also prayed for "an injunction requiring the City to open the road to their property." *Id.* at 347, 558 N.W.2d at 654. We concluded that the public policy considerations underlying § 893.80(4) "apply just as earnestly to an equitable action seeking injunctive relief against the agency or the official as they do to one for the recovery of money." *Id.* at 352, 558 N.W.2d at 656–57. Following the supreme court's reasoning in *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994), we held that:

> [T]he official immunity provisions of § 893.80(4), STATS., like the notice and claim provisions of § 893.80(1), are not limited to tort or money-damage actions, but are equally applicable to actions which, like the Johnsons, seek injunctive relief against the governmental subdivision or employee.

*Johnson*, 207 Wis. 2d at 352, 558 N.W.2d at 657 (emphasis added; footnote omitted).

Willow Creek, however, argues that *Johnson* does not apply to this case. To support this assertion, it relies on *Energy Complexes, Inc. v. Eau Claire County*, 152 Wis. 2d 453, 465, 449 N.W.2d 35, 39 (1989), in which the supreme court examined the scope of

§ 893.80(4), STATS. *Energy Complexes* was a breach of contract suit brought by a building contractor against Eau Claire County concerning the reimbursement of certain post-construction costs. The County responded to the suit by claiming immunity under § 893.80(4). The Court concluded that immunity applied in tort actions, not in contract actions. *See id.*

Willow Creek argues that because the supreme court has held that governmental immunity applies only to tort actions, *Johnson* is not controlling. However, unlike *Energy Complexes*, this case does not involve a contract claim. If this were a contract case, *Energy Complexes* might control; however, similar to *Johnson*, this is a negligence claim in which the plaintiffs are seeking equitable relief. Therefore, we are satisfied that we can apply the holding in *Johnson* to this case without negating the holding in *Energy Complexes*.

Willow Creek next argues that *Johnson* does not apply because it involved a declaratory judgment, and this court has held in *Schmeling* that immunity does not apply to declaratory judgment actions. In *Schmeling*, we concluded that declaratory judgments are not "suits" within the meaning of § 893.80(4), STATS.; therefore, governmental immunity does not apply. *See Schmeling*, 212 Wis. 2d at 914, 569 N.W.2d at 791.[4] We stated that:

> Our concern in *Johnson* was that suits for injunction, no less than those for money damages, might "unduly hamper[ ] or intimidate[ ]" local officials in the execution of their discretionary, legislative

---

[4] However, unlike in this case, the plaintiff in *Schmeling* only requested declaratory judgment; he did not seek monetary and injunctive relief.

functions; deprive them of "valuable time"; and improperly involve the courts in the policy decisions of coordinate branches. Some of these same considerations may apply to declaratory judgment actions, but the legislature has determined that they are outweighed by the need to afford citizens an opportunity for a court to declare their rights. Given the express statutory authorizations under §§ 806.04 and 59.69(14), STATS., for citizens affected by local ordinances in general, and county zoning ordinances in particular, to seek a judicial determination of rights, we conclude that § 893.80(4), STATS., is not a bar to this action for a declaratory judgment.

*Id.* (citations omitted).

While Willow Creek is correct that governmental immunity does not apply to declaratory judgment actions, this is a pyrrhic victory because we have concluded that Willow Creek has no right to operate its game bird farm free from the Town and County's regulation.[5] A declaratory judgment would only reiterate that conclusion. In sum, because we have concluded that governmental immunity shields the Town and County from suits for equitable relief, we need not address the merits of Willow Creek's estoppel argument regarding Budros alleged misrepresentation.

Finally, because we have concluded that Willow Creek cannot prevail on either of its causes of action,

---

[5] Willow Creek points out other cases, which it argues limit or undermine *Johnson.* Willow Creek is essentially suggesting that we disregard the holdings in *Johnson* and *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994). We are prohibited from doing so. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997) (only the supreme court has the power to overrule, modify or withdraw language from a published decision).

we need not address the issue of res judicata. We therefore affirm.

*By the Court.*—Orders affirmed.

VERGERONT, J. *(concurring)*. I concur in the reasoning and the result of the majority's decision, but write separately to express my concern over the reach of our decision in *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 558 N.W.2d 653 (Ct. App. 1996). I agree that we are bound by *Johnson*, and *Johnson* compels the conclusion that the Town and County in this case are immune, under § 893.80(4), STATS., from suit for injunctive relief. Our decision in *Johnson*, in turn, was compelled, in our view, by the reasoning of the supreme court's decision in *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994), which addressed § 893.80(1), not § 893.80(4). Under *Johnson*, a citizen may not obtain injunctive relief against a municipality or a municipal official even if equitable estoppel would otherwise lie to prevent the municipality from enforcing an ordinance. I recognize that generally erroneous acts of municipal officers do not afford a basis to estop a municipality from enforcing ordinances enacted pursuant to the police power. *See State ex rel. Westbrook v. City of New Berlin*, 120 Wis. 2d 256, 262, 354 N.W.2d 206, 209 (Ct. App. 1984). However there are situations in which it may be appropriate to enjoin on equitable grounds a municipality from enforcing an ordinance. *See, e.g., Russell Dairy Stores v. City of Chippewa Falls*, 272 Wis. 138, 148, 74 N.W.2d 759, 765 (1956) (city is estopped from revoking permit to plaintiff for driveway installation after plaintiff had installed the driveway and used it for several months, and is enjoined from

enforcing ordinance against plaintiff as to that driveway).

The case before us may not be one of those few cases where a municipality should be equitably estopped from enforcing an ordinance, but even if it were, under *Johnson* the municipality would be immune from suit seeking injunctive relief. I question whether the legislature intended such a result when it enacted § 893.80(4), STATS.